# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA O.D.G.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. CV 17-07170-AFM <br><br> **MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

On November 1, 2013, Plaintiff applied for supplemental security income, alleging disability since October 13, 1995. Plaintiff's application was denied initially

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

and on reconsideration. (Administrative Record ["AR"] 225-227, 233-237.) A hearing took place on March 7, 2016 before an Administrative Law Judge ("ALJ"), at which Plaintiff, her representative, and a vocational expert ("VE") were present. (AR 157-194.)

In a decision dated April 21, 2016, the ALJ found that Plaintiff suffered from the severe impairments of autism spectrum disorder, depression, obsessive-compulsive disorder, and cognitive disorder. (AR 20.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels with the following restrictions: She can understand and remember simple work instructions; she can interact appropriately with coworkers and supervisors on an occasional and superficial basis; she cannot have contact with the public; and she can adjust to changes in routine work environments. (AR 22.) Based upon the testimony of the VE, the ALJ found that Plaintiff was capable of performing work existing in significant numbers in the national economy, including the occupations of hand packager, laundry worker, scrap sorter, and can filler. (AR 33.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 34.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 7-13), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether the ALJ erred in finding that Plaintiff's impairments did not meet or equal Listings 12.04, 12.06 or 12.10.
2. Whether the ALJ's RFC assessment is supported by substantial evidence.
3. Whether the ALJ's RFC assessment is erroneous because it is inconsistent with his finding that Plaintiff suffered moderate limitations in concentration, persistence, and pace.
4. Whether the ALJ properly evaluated the opinions of treating, examining, and non-examining physician.
5. Whether the ALJ properly rejected Plaintiff's subjective complaints.

1. 6. Whether the ALJ properly discredited lay testimony and statements.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

**I.     Relevant Evidence**

**A.  Plaintiff's Educational Records**

In 2004, when Plaintiff was eight years old, she was diagnosed to be in the Autism Spectrum. (AR 424-432.) Based upon her behavioral and mental disorders, Plaintiff received a special services education. She completed 12th grade under an individualized education plan. (AR 434-637.) As the ALJ noted, Plaintiff's records from the Los Angeles Unified School District indicate that Plaintiff had problems completing assignments on time and on her own; she needed several prompts to stay on task and follow class discussions; she fell asleep in class; she had trouble recognizing social cues; and she had difficulty maintaining positive relationships with her peers. (AR 24, 497-503.) The ALJ noted that Plaintiff was twice

administered the Woodcock-Johnson Normative Test of Achievement, and scored in the average range in nearly all categories. (AR 620-637.)

**B. Plaintiff's Medical Records**

<u>Dr. Foxman</u>

Plaintiff began receiving mental health treatment at Facey Medical Clinic in January 2012, when she was 16 years old. Plaintiff saw Eric Foxman, M.D. every month or two until August 2015, when she transitioned to an adult psychiatrist. (*See* AR 806.) At her initial evaluation, Plaintiff exhibited constricted affect, dysthymic and irritable mood, no psychotic symptoms, appropriate thought content. According to the records, Plaintiff attempted suicide at age 12 after which she underwent psychiatric hospitalization. Plaintiff was diagnosed with Asperger's Pervasive Disorder and given a Global Assessment Functioning ("GAF") score of 60-70. Individual psychotherapy, collateral parent sessions, and supportive psychotherapy were recommended. In addition, Plaintiff was prescribed antidepressant medication. (AR 678-683.)

In February 2012, Dr. Foxman reported that Plaintiff engaged in "a lot of" obsessive-compulsive activity, primarily related to hygiene and germs, as well as trichotillomania.[2] Dr. Foxman noted that Plaintiff presented with a flat affect, spoke in monotone, and did not make eye contact. She appeared intelligent in conversation and had no formal thought disorder. (AR 674-676.) Dr. Foxman's clinical impressions included Asperger's disorder, major depression – recurrent – moderate, and trichotillomania. He assessed Plaintiff's GAF at 65. He prescribed bupropion and low dose Zoloft. (AR 660.)

By April 2012, Plaintiff's symptoms had appeared to improve. Her mother reported that she had not seen Plaintiff engaged in hair pulling, but Plaintiff continued to refuse to touch doorknobs and take excessively long showers. Dr. Foxman noted

---

[2] Trichotillomania is an impulse disorder in which patients chronically pull out hair resulting in noticeable hair loss. *See* https://medlineplus.gov/ency/article/001517.htm

4

that Plaintiff made eye contact when speaking, but still presented with a flat affect and spoke in monotone. As the ALJ noted, on that date, Dr. Foxman assessed a GAF score of 85. (AR 25, 672-673.)

Progress notes in July and August 2012 indicated that Plaintiff exhibited impulsive behavior that put her at risk. Plaintiff experienced angry episodes in which she lost control, became violent, and ran away in the middle of the night. Plaintiff's mother reported that Plaintiff took excessively long showers and could not take medications herself without reminders. Plaintiff performed "ritualistic washing" in the shower and was germophobic. Dr. Foxman assigned a GAF of 75. (AR 25, 668-670.)

In September 2012, Plaintiff's reported her mood was "good." Plaintiff's father reported that Plaintiff "took off" at 9:00 at night and they had to go look for her. Plaintiff parents also reported that they were at times able to deescalate Plaintiff. Plaintiff stopped hair pulling, but would not touch doorknobs. Plaintiff's speech remained monotone. (AR 666-667.) Follow up appointments in November and December 2013 were similar. (AR 706-708, 721-722, 724-725.)

Notes from Plaintiff's January 2014 follow-up with Dr. Foxman indicate that Plaintiff continued to exhibit obsessive-compulsive symptoms. She presented as calm, with a more full affect, less monotone speech, appropriate speech content and judgment. Dr. Foxman refilled prescriptions for fluoxetine and bupropion. He assigned Plaintiff a GAF of 75. (AR 703-705, 715-716.)

In March 2014, Plaintiff reported good medication adherence. Although she reported no hair pulling, her obsessive cleaning and long showers continued. Dr. Foxman again assessed a GAF score of 75. Progress reports from July through November 2014 progress notes were similar. (AR 700-702, 712-714, 796-798.)

In January 2015, Plaintiff stopped taking her medication. She told Dr. Foxman that she felt the medication did not help. Plaintiff's mother disagreed, stating that the family saw a "huge difference" when Plaintiff complied with her medication.

According to Plaintiff's mother, Plaintiff had been violent, had thrown flammable liquids at her, and had hurt her siblings. (AR 793.) In February 2015, Plaintiff complained of "blanking out a lot more," explaining that her mind "shuts off." She reported taking her medication and denied angry episodes. (AR 790.) In May 2015 Plaintiff again reported taking her medication and denied angry episodes. (AR 787-792.)

In July 2015, Plaintiff's mother told Dr. Foxman that Plaintiff seemed very depressed, and had attempted to cut herself with a knife. During her office visit, Plaintiff's affect was despondent and tearful. Plaintiff reported that she was frustrated because despite her best efforts, she had been unable to get a job. Dr. Foxman refilled prescription for Zoloft and added Abilify and Trazodone. (AR 763-765.) On the same date, Dr. Foxman completed a form indicating that Plaintiff was in need of protective supervision for in home supportive services. He explained that Plaintiff had a recent episode of suicidal ideation and that her judgment was severely impaired. (AR 818.)

Plaintiff cried throughout her August 2015 follow-up therapy session. She was dysthemic, but oriented and without formal thought disorder. Plaintiff admitted having thoughts of suicide earlier in the year, but denied present ideation. She had difficulties with her memory. Plaintiff's GAF score was 59. (AR 783-786.)

Dr. Foxman completed a Mental Medical Source Statement in July 2014 in which he opined that although Plaintiff was able to understand both short, simple as well as detailed, complex instructions, she had poor ability to carry out those instructions. In Dr. Foxman's opinion, Plaintiff had a poor ability to work without supervision and could not reliably finish projects. In addition, she had a poor ability to interact with coworkers, supervisors, or the public; and a poor ability to adapt to changes in the workplace. (AR 759-760.)

Dr. Hunanyan

Plaintiff's mental health care was transitioned from Dr. Foxman, a child psychiatrist, to Elena Hunanyan, M.D., who performed her initial evaluation in

August 2015. Plaintiff reported symptoms of isolation, hopelessness, anhedonia, poor sleep, sadness, and suicidal ideation with a two-week psychiatric hospitalization in 2008. She also reported some auditory hallucinations urging her to commit suicide. Dr. Hunanyan found Plaintiff's mood and affect depressed, her thought process linear and goal-directed, and noted that Plaintiff denied current suicidal or homicidal thought, hallucinations, or paranoid delusion. Plaintiff's judgment and impulse control were noted to be limited. Dr. Hunanyan diagnosed Plaintiff with autistic spectrum disorder, major depressive disorder, and anxiety. She increased Plaintiff's Fluoxetine and Trazodone prescriptions. (AR 806-808.) Notes from a follow up visit in September 2015 indicate that Plaintiff's affect remained constricted. (AR 808-809.) The following month, Dr. Hunanyan noted that Plaintiff was frustrated and angry from situational stressors such as changes in her family's living situation. As a result, Plaintiff missed two weeks of school. (AR 809-810.)

In February 2016, Dr. Hunanyan described Plaintiff's mood as "ok," her affect was constricted. She noted that Plaintiff was frustrated by her inability to keep a job. According to Dr. Hunanyan, Plaintiff's attempt to maintain employment resulted in decompensation. Plaintiff's attempt to participate in a work-study program failed because it resulted in an exacerbation of her symptoms and she could not tolerate the environment. (AR 811-812.)

Dr. Starrett

Richard Starrett, Ph.D. conducted a consultative psychological evaluation of Plaintiff in February 2014. According to his report, Dr. Starrett reviewed a September 2014 report from the Facey Medical Group diagnosing Plaintiff with Asperger's Disorder, Major Depression, and trichotillomania. After conducting an evaluation, Dr. Starrett concluded that Plaintiff's overall cognitive ability fell within the average range, although Plaintiff's working memory ranked in the mildly mentally retarded impaired range. Dr. Starrett diagnosed Plaintiff with a learning disability and cognitive disorder. He assessed Plaintiff with a GAF score of 55. (AR 689-694.)

7

Dr. Starrett opined that Plaintiff could understand, remember, and carry out short and simplistic instructions without difficulty, but had moderate inability to understand, remember, and carry out detailed instructions. Further, he opined that Plaintiff had a moderate inability to make simplistic work-related decisions without special supervision. Plaintiff would have a moderate inability to interact appropriately with supervisors, coworkers, and peers. Finally, he opined that Plaintiff's ability to maintain adequate attention, persistence and pace was moderately limited. (AR 694.)

State agency physicians

Barry Rudnick, M.D., a State agency psychological consultant, opined that Plaintiff could understand and remember short, simple instructions. However, he also opined that Plaintiff was moderately limited in the following abilities: carrying out detailed instructions; maintaining attention and concentration for extended periods; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others; completing a normal workday and workweek without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. (AR 205-206.) Further, Dr. Rudnick opined that Plaintiff was markedly limited in her ability to interact appropriately with the general public; moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors; and moderately limited in her ability to respond appropriately to changes in the work setting. (AR 206-207.)

On reconsideration, State agency psychological consultant Uwe Jacobs, Ph.D., indicated that the record cast doubt on Plaintiff's ability to pay attention to anything for any length of time despite good problem-solving skills and requested an opinion from Dr. Foxman. (AR 218.) Dr. Jacobs ultimately concluded that Plaintiff was markedly limited in various social interactions, could not sufficiently cope with

social interactions in the workplace due to Asperger's syndrome, and could not adapt to the stress and changes of competitive environment. (AR 221-223.)

Other medical evidence

The ALJ also discussed evidence that in January 2013, Plaintiff was treated by Robin Berglund, M.D. Dr. Berglund noted that Plaintiff related poorly, her affect was flat and she was euthymic but absent. Plaintiff was diagnosed with Autism Spectrum Disorder and Major Depressive Disorder. She was prescribed Wellbutrin. (AR 26, 639-640.) March 2013 treatment notes indicated that Plaintiff had a part-time job at Petco. In April 2013, Plaintiff's depression and anxiety were noted as stable. She was still working at Petco. In July 2013, Plaintiff's anxiety and depression remained stable, and Plaintiff reported being compliant with her medication. (AR 641-642.)

In October 2013, the North Los Angeles Regional Center evaluated Plaintiff and created an individual program plan for her. Notes indicate that Plaintiff had been aggressive toward her family members and her behavior fluctuated depending upon whether she was taking her medication. Plaintiff did not take her medication consistently and required reminders to take them. It was noted that Plaintiff required someone nearby to avoid injury or harm in unfamiliar settings. In-home respite services were recommended. (AR 645-654.) In November 2015, the plan was amended after Plaintiff's mother reported that Plaintiff's mood had become unstable, and the family had attempted to prevent her from hurting herself with a kitchen knife or overdosing on prescription medication on various occasions with the last two weeks. (AR 403-406.)

In February 2014, Sheri Kessel, M.A. performed an adaptive skills assessment for Plaintiff. Plaintiff's scores were in the extreme low range. (AR 358-364.)

## II. The ALJ's decision

When an applicant for disability benefits alleges mental impairment, the ALJ must employ the "special psychiatric review technique" described in 20 C.F.R. § 404.1520a to determine whether the mental impairment is severe. *Keyser v.*

*Comm'r of Soc. Sec. Admin*, 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a. The ALJ "must determine whether an applicant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, and determine the severity of the mental impairment (in part based on the degree of functional limitation)." *Keyser*, 648 F.3d at 725 (internal quotation marks and citation omitted) (quoting 20 C.F.R. § 404.1520a(c)(1)). The four functional areas the ALJ assesses are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See Friesth v. Berryhill*, 2017 WL 901882, at *2 (C.D. Cal. Mar. 7, 2017) (citing 20 C.F.R. § 404.1520a(c)(3)).

Here, the ALJ found Plaintiff had mild limitations in her activities of daily living, moderate limitations in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decomposition. (AR 21.) With regard to the functional area of concentration, persistence or pace, the ALJ explained that the record demonstrated that Plaintiff had some difficulty in sustaining focus, attention, and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings. At the same time, the ALJ noted that Plaintiff was capable of focusing long enough to read, successfully complete community college classes if she only takes two classes at a time, write stories, draw, and play video games. (AR 21.)

The ALJ incorporated the following limitations in his RFC assessment: Plaintiff is capable of understanding and remembering simple work instructions, adjusting to changes in routine work environments, and interacting with coworkers and supervisors on an occasional and superficial basis; but she cannot have contact with the public. (AR 22.)

In reaching this RFC assessment, the ALJ gave little weight to the opinion of Dr. Foxman, Plaintiff's treating physician. The ALJ explained that Dr. Foxman's opinion was not supported by his treatment records, in which he regularly gave

Plaintiff GAF scores of 65 to 75. In addition, the ALJ found Dr. Foxman's assessment inconsistent with "other medical assessments, function reports completed by others who observed Plaintiff regularly and opined that she could follow written instructions well, and Plaintiff's testimony that she believed she could do jobs such as stuffing envelopes. (AR 31.)

The ALJ gave great weight to Dr. Starrett's opinion, including his opinion that Plaintiff was moderately limited in her ability to maintain adequate attention, persistence and pace. As the ALJ explained, psychology is Dr. Starrett's area of expertise and his opinion was consistent with "reports to medical providers that the claimant is able to concentrate sufficiently to complete college-level course work." (AR 31.) However, the ALJ rejected Dr. Starrett's opinion that Plaintiff needed special supervision to complete tasks because it was "not consistent with the residual functional capacity finding" or the facts that Plaintiff was able to complete schoolwork and work in a stockroom without supervision. (AR 31.)

The ALJ noted that the State agency consultants are "highly qualified physicians and psychologists who are experts in the Social Security disability programs and in the evaluation of the medical issues in disability claims under the Act." (AR 32.) The ALJ then gave "some weight" to Dr. Rudnick's opinion, but gave Dr. Jacobs' opinion little weight because "physicians who have personally examined the claimant, such as Dr. Starrett, indicate that she can work." (AR 32.)

The ALJ asked the VE whether there were jobs the following hypothetical claimant could perform: "this person can understand, remember, at least and carry out simple work instructions, [c]an interact appropriately with coworkers and supervisors on an occasional and superficial basis," but could have "no real contact with the public." (AR 190-191.) The ALJ identified several jobs such a person could perform. (AR 191-192.)

///

///

## III. Relevant Law

When an ALJ finds that a claimant has moderate limitations in maintaining concentration, persistence, and pace, that limitation must be reflected in the Plaintiff's RFC and in the hypothetical presented to the VE. *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("Although the ALJ found that the [claimant] suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the [VE]."); *Williamson v. Comm'r Of Soc. Sec.*, 438 F. App'x 609, 611-612 (9th Cir. 2011) (same); *Willard v. Colvin*, 2016 WL 237068, at *3 (C.D. Cal. Jan. 20, 2016). Merely limiting the claimant's potential work to simple work does not sufficiently account for moderate limitations in concentration, persistence, or pace. *Brink v. Comm'r of Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) ("The Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive. Indeed, repetitive, assembly-line work ... might well require extensive focus or speed.").

Relying upon *Brink* and *Lubin*, numerous courts in this district have found reversible error where an ALJ finds that a claimant has moderate limitation in maintaining concentration, persistence, or pace, but purports to account for that limitation in the RFC only by limiting the claimant to simple, repetitive, or unskilled work. *See e.g., John C. v. Berryhill,* 2018 WL 3388918, at *9 (C.D. Cal. July 9, 2018); *Friesth*, 2017 WL 901882, at *6-7; *Alva v. Colvin*, 2016 WL 6561452, at *6 (C.D. Cal. Nov. 2, 2016); *Sanchez v. Colvin*, 2016 WL 1948782, at *5 (C.D. Cal. May 3, 2016); *Willard*, 2016 WL 237068, at *3 (C.D. Cal. Jan. 20, 2016); *Woodward v. Colvin*, 2015 WL 8134375, at *7 (C.D. Cal. Dec. 4, 2015).

## IV. Analysis

Here, the ALJ found that Plaintiff was moderately limited in her ability to maintain concentration, persistence or pace. Yet he failed to account for that

limitation in his RFC. Likewise, the ALJ's hypothetical posed to the VE did not include Plaintiff's moderate difficulties in her ability to maintain concentration, persistence or pace. Consequently, the ALJ's hypothetical question asking the VE to assume a claimant who could understand, remember, and carry out simple instructions (*see* AR 190) did not adequately address Plaintiff's limitations in maintaining concentration, persistence or pace. *See Banks v. Colvin*, 2017 WL 113055, at *4 (C.D. Cal. Jan. 11, 2017) (ALJ erred in failing to include moderate limitation in concentration, persistence, or pace in RFC); *Lee v. Colvin*, 80 F. Supp. 3d 1137, 1150-1151 (D. Or. 2015 (reversible error where ALJ's hypothetical questions only inquired about jobs for someone who can "understand, remember, and carry out only simple instructions that can be learned by demonstration" despite finding claimant suffered moderate limitations regarding concentration, persistence and pace).

Citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008), the Commissioner argues that the ALJ was not required to incorporate his finding regarding moderate limitations in maintaining concentration, persistence and pace in his RFC. The Court finds the Commissioner's argument to be unpersuasive.

In *Stubbs-Danielson*, a physician identified claimant as having "slow pace in thought and action," but found she was still able to "follow three-step instructions." *Stubbs-Danielson*, 539 F.3d at 1171. The ALJ "translated" the physician's conclusions regarding pace and mental limitations into a restriction to "simple tasks." The Ninth Circuit concluded that the ALJ properly "translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him – Dr. Eather's recommended restriction to 'simple tasks.'" *Stubbs-Danielson*, 539 F.3d at 1174. Significantly, the ALJ in *Stubbs-Danielson* did not make a finding that the claimant was moderately limited in concentration, persistence or pace. Thus, *Stubbs-Danielson* is distinguishable from *Brink*, *Lubin,* and the cases following them.

The Court recognizes that some district courts have extended *Stubbs-Danielson*'s reasoning to cases where the ALJ did find moderate restrictions in concentration, persistence, and pace while employing the "special psychiatric review technique" described in 20 C.F.R. § 404.1520a, but assessed an RFC only restricting the plaintiff to simple, routine tasks. As those courts note, "the special analysis for mental disorders, which includes an assessment of concentration, persistence, and pace, is a severity analysis which is distinct from the functional analysis at step five of the sequential evaluation." *Mitchell v. Comm'r of Soc. Sec.*, 2013 WL 5372852, at *5 (E.D. Cal. Sept. 25, 2013), *aff'd*, 642 F. App'x 731 (9th Cir. 2016) (citing *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007)). As these cases note, "[t]he relevant inquiry is whether the medical evidence supports a particular RFC finding" with regard to concentration, persistence, and pace. *Phillips v. Colvin*, 61 F. Supp. 3d 925, 940 (N.D. Cal. 2014); *see, e.g.*, *Wilder v. Comm'r of Soc. Sec. Admin.*, 545 F. App'x 638, 639 (9th Cir. 2013) (ALJ did not err by failing to include the step two finding that plaintiff had moderate difficulties in maintaining concentration, persistence, and pace because "the medical evidence in this record does not support any work-related limitation in [plaintiff's] ability to sustain concentration, persistence, or pace."); *Bordeaux v. Comm'r of Soc. Sec. Admin.*, 2013 WL 4773577, at *13 (D. Or. Nov. 18, 2013) ("the ALJ did not err in omitting from the RFC assessment the specific [concentration, persistence, and pace] finding set out in the special technique ... a careful review of the medical evidence and the ALJ's decision supports the conclusion that the ALJ's RFC adequately account for ... the "less than substantial limitations in concentration, persistence and pace at simple work activities" identified by Dr. Logue.").

Nevertheless, unlike *Stubbs-Danielson*, the ALJ here specifically found that Plaintiff was moderately limited in her ability to maintain concentration, persistence, or pace. Furthermore, the ALJ did not purport to rely on – and the Court's review of the record does not reveal – any medical evidence that Plaintiff could perform simple

work despite her moderate limitation in concentration, persistence, or pace. Indeed, as set forth above, all of the medical evidence regarding Plaintiff's limitations was more restrictive than the ALJ's mere translation into an ability to understand, remember, and carry out simple tasks. Indeed, as set forth above, the ALJ gave significant weight to the opinion of Dr. Starrett, who opined that Plaintiff had a moderate inability to maintain adequate attention, persistence, and pace. (AR 31.) Accordingly, it was error to fail to include that limitation in determining Plaintiff's ability to engage in work existing in significant numbers in the national economy. *See Banks*, 2017 WL 113055, at *3-4 (distinguishing *Stubbs-Danielson* because ALJ did not rely on medical opinion that claimant could perform unskilled work despite moderate limitation in concentration, persistence and pace); *Friesth*, 2017 WL 901882, at *7 (same).

Finally, the error was not harmless. The VE testified that based on the ALJ's incomplete hypothetical question, Plaintiff could perform work as a hand packager, laundry worker, scrap sorter, and can filler. While they may involve only simple work instructions, the jobs identified by the VE reasonably could require Plaintiff to work at a consistent pace entailing sustained concentration. For example, a scrap sorter is required to sort scrap metal and remove foreign matter preparatory to use in recasting, shovel metal scrap onto conveyor leading to magnetic drum that removes iron and steel pieces, and manually remove contaminating nonferrous metals. *See* D.O.T. 509.686-018. A hand packager performs a myriad of tasks, including lining and padding crates and assembling cartons; starting, stopping, and regulating the speed of a conveyer; inserting or pouring product into containers or filling containers from a spout or chute; nailing, gluing, or closing and sealing containers; or stacking, separating, counting, packing, wrapping, and weighing bakery products. *See* D.O.T. 920.587-018. These tasks could require sustained concentration and the ability to work at a consistent pace. Without the benefit of the VE's testimony on such matters, it is unclear whether moderate limitations on Plaintiff's ability to maintain

concentration for extended periods or work at a consistent pace would render her unable to perform the jobs identified by the VE. *See Friesth*, 2017 WL 901882, at *7 (ALJ's failure to include limitation on concentration, persistence or pace in hypothetical was not harmless because the jobs identified by VE could require worker to perform at a consistent pace and maintain concentration).

Because the Court concludes that reversal is warranted based upon the above error, it need not resolve Plaintiff's remaining contentions.

## **REMEDY**

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

///

///

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[3]

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 11/30/18

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[3] It is not the Court's intent to limit the scope of the remand.